UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALYSSA CORN,

      Plaintiff,

v.

MICHIGAN STATE UNIVERSITY; THE BOARD
OF TRUSTEES OF MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR (individually;);
and  WILLIAM D. STRAMPEL (individually),

      Jointly and Severally,

      Defendants.

---

Michael L. Pitt (P24429)
Megan A. Bonanni (P52079)
PITT, McGEHEE, PALMER & RIVERS. P.C.
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
248-398-9804 (fax)
mpitt@pittlawpc.com
mbonanni@pittlawpc.com

_____

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, by and through her attorneys Pitt, McGehee, Palmer & Rivers and  hereby alleges and states as follows:

**INTRODUCTION**

1.     This is a civil action for monetary relief for injuries  sustained by Plaintiff as a result of the acts, conduct, and omissions of Lawrence Nassar, Michigan  State  University  ("MSU"), Board of Trustees of Michigan State University ("MSU Trustees"), William D. Strampel and their  respective  employees,  representatives,  and  agents,  relating  to  sexual  assault,  abuse,

molestation, and nonconsensual sexual touching  and harassment by Defendant Nassar against Plaintiff Alyssa Corn who was a minor when the sexual assault took place.

2.      Plaintiff Alyssa Corn (DOB 1997), a resident of Northville, Michigan was an athlete participating in cheerleading at Northville High School in Northville, Michigan.

3.      Following a 2012 back injury, Plaintiff Corn was referred to Defendant Nassar, who came highly recommended to Plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community.

4.      Plaintiff and her parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.      From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.      For over 20 years, Defendant Nassar had unfettered access to young female athletes through, among others, the Sports Medicine Clinic at MSU.

7.      Under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested numerous girls and women, many of whom were minors, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant.

8.      The Plaintiff, who was repeatedly sexually assaulted, abused and molested 24 times from November 2, 2012 through June 5, 2015.

9.      The sexual assaults of Plaintiff were carried out at the MSU Sports Medicine Clinic.

10.     Prior to Plaintiff's assault, from 1998-2016 numerous individuals reported Defendant Nassar's illegal conduct to various MSU officials including MSU coaches, trainers.

11.     Because MSU took no action to investigate the 1997/1998, 1999 or 2000 complaints and  took no corrective action, from 2000 to 2016, under the guise of treatment,

2

Plaintiff and others, many of whom were minors, were also sexually assaulted, abused, and molested  by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual  sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts.

12. Additional complaints regarding Defendant Nassar's conduct surfaced in 2014 after which Defendant MSU issued a report with conclusions  which stated that the complainant didn't understand the "nuanced difference" between sexual  assault and an appropriate medical procedure.

13. Following the investigation, upon information and belief Defendant Nassar became subject  to new institutional guidelines, as related to patient care, including among other safeguards, that another person (resident, nurse) remains in the examination room whenever procedures of anything close to a sensitive  area are performed.

14. The guidelines were issued by William D. Strampel, Dean of the College of Osteopathic Medicine at MSU, to Defendant Nassar on or around July  30, 2014.

15. Defendant Strampel failed to ensure  Defendant Nassar was adhering to the guidelines listed above.

16. New employees at Defendant MSU's Sports Medicine Clinic were not oriented regarding  the guidelines listed above.

17. Defendant Nassar continued to treat patients without a chaperone and continued to perform the "procedure" and "treatment" without gloves.

18. Defendant Nassar did not modify the "procedure" to limit skin-to-skin contact.

19. Following the investigation, between approximately 2014 and 2016, again, dozens  of female patients and athletes, including Plaintiff, were sexually assaulted by Defendant

3

Nassar. [1]

20.    Through his position with MSU and his notoriety, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU.

21.    Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or their parents.

22.    All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University.

23.    The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiff or their parents robbed them of the opportunity to reject the "treatment."

24.    Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

25.    In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse."

26.    Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

---

[1] *See*, As F.B.I. Took a Year to Pursue the Nassar Case, Dozens Say They Were Molested, Dan Berry, Serge F. Kovaleski, and Juliet Macur, February 3, 2018, available at https://www.nytimes.com/2018/02/03/sports/nassar-fbi.html (reporting at least 40 victims were assaulted, abused, and molested between approximately July 2015 and September 2016). Last accessed Feb. 17, 2018.

27.    Michigan State University's deliberate indifference before, during, and after the sexual  assault, abuse, and molestation of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq*., 42 U.S. C. §1983, the Patient Protection and Affordable Care Act §1557, 42. U.S.C. §18116, as well as other Federal and State  laws.

28.    The MSU Defendants' failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in  breach of their fiduciary duties to Plaintiff with whom they had a special relationship, and  in violation of Michigan common law.

29.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County,  Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[2]

30.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal  Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.[3]

31.    On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[4] and Eaton County, Michigan.[5]

32.    On July 10, 2017, Defendant Nassar pleaded guilty to the federal charges of child pornography, receipt/attempted receipt of child pornography, and destruction and concealment

---

[2] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[3] W.D. Mich. 1:16-cr-242, ECF 16, PageID.88.

[4] *State v. Nassar*, Ingham County District Court Case No. 17-00425, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._201 7_ 552531_7.pdf
[5] *State v. Nassar*, Eaton County District Court Case No. 17-0318,        *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017 _5 52536_7.pdf

of records and tangible objects.

33.    On November 22, 2017, Defendant Nassar pleaded guilty to 7 counts of first-degree  criminal sexual conduct in Ingham County Michigan.

34.    On November 29, 2017, Defendant Nassar pleaded guilty to 3 counts of first degree  criminal sexual conduct in Eaton County Michigan.

35.    On December 7, 2017, Defendant Nassar was sentenced to a 720-month (60 year) prison  term for the federal child pornography charges.

36.    From, January 16, 2018 to January 24, 2018, a sentencing hearing was held in Ingham County  Michigan for  the 7  counts  of  first-degree criminal sexual  conduct to  which Defendant Nassar pleaded guilty.

37.    Dozens of Plaintiff and  many others  provided victim impact  statements  at the hearing and  some of the Plaintiff who were seeking to proceed anonymously in this litigation chose to publicly identify themselves at the sentencing hearing.

38.    On January 24, 2018, Defendant Nassar was sentenced to a 40 to 175-year prison term for  the Ingham County charges.

39.    From January 31, 2018 to February 5, 2018, a sentencing hearing was held in Eaton County  Michigan  for the 3 counts of first degree criminal sexual conduct to which Defendant Nassar pleaded guilty.

40.    On February 5, 2018, Defendant Nassar was sentenced to a 40 to 125-year prison term for  the Eaton County charges.

41.    Ultimately the acts, conduct, and omissions of the MSU Defendants and their policies, customs, and practices with respect to investigating sexual   assault allegations severely compromised the safety and health of Plaintiff, and an  unknown number of other individuals, and

have resulted in repeated instances of sexual assault,  abuse, and molestation of Plaintiff by Defendant Nassar, which has been devastating for  Plaintiff and her family.

42.     This action arises from Defendants' blatant disregard for Plaintiff' federal and state rights,  and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

**JURISDICTION AND VENUE**

52.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*., as more fully set forth herein.

53.     This is also an action to secure relief for violations of rights guaranteed by the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 (2012) ("Section 1557").

54.     Section 1557 of the Affordable Care Act prohibits discrimination in health care programs   or activities, "any part of which is receiving Federal financial assistance, including credits,  subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency" or any entity established under Title I of the Affordable Care Act  or its amendments.

55.     This Court has original jurisdiction over Plaintiff' claims arising under Section 1557.

56.     This is also an action to redress the deprivation of Plaintiff' constitutional rights under the  Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

57.     Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts  jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

58.     Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district  courts original jurisdiction over any civil actions authorized by law to be brought by any

7

person to redress the  deprivation,  under color  of  any State Law,  statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution  of the United States or by any Act of Congress providing for equal rights of citizens or of  all  persons  within  the jurisdiction  of the United States, and any civil action to recover  damages or to secure equitable relief under any Act of Congress providing for  the  protection of civil rights.

59.     In addition, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within  the  original jurisdiction  of  this  Court that  they  form  part of  the  same  case  or  controversy.

60.     The  events  giving  rise  to  this  lawsuit  occurred  in  Ingham  County, Michigan within the Southern Division of the Western District of Michigan.

61.     Venue is proper in the United States District Court for the Western  District of Michigan,  pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events  giving rise to the claim occurred.

## PARTIES AND KEY INDIVIDUALS

62.     Plaintiff  reallege  and  incorporate  by  reference  the  allegations  contained  in  the previous  paragraphs.

63.     Plaintiff Alyssa Corn (DOB 1997) is a female and was a resident of the  State of Michigan at all relevant times as indicated below. Plaintiff Corn was a minor at  the times she was sexually assaulted, abused, and molested by Defendant Nassar.

64.     Defendant Lawrence "Larry" Nassar, was a Doctor of Osteopathic Medicine and was a  resident of Michigan at all relevant times.  Defendant Nassar  is an inmate in the custody of the Federal Bureau of Prisons.

65.     Defendant Michigan State University (hereinafter, "Defendant MSU") was at all

relevant  times and continues to be a public university organized and existing under the laws of the  state of Michigan.

66.    Defendant Michigan State University receives federal financial assistance and is therefore  subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

67.    Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant  MSU Trustees") is the governing body for Michigan State University.

68.    Defendant William D. Strampel, D.O. was the Dean of the College of Osteopathic Medicine at Michigan State University and served as Dean beginning in approximately  April 2002 and as Acting Dean between December 2001 and April 2002. Defendant Strampel resigned as Dean in or around December 2017.

69.    Defendants MSU, MSU Trustees, Strampel and Nassar are hereinafter collectively referred to as the MSU Defendants.

## FACTUAL ALLEGATIONS

70.    Plaintiff reallege and incorporate by reference the allegations contained in the previous  paragraphs.

71.    At all relevant times, Defendant Nassar maintained offices at MSU in East Lansing, Michigan.

72.    At all relevant times, Defendants MSU, MSU Trustees, Nassar, Strampel were acting under color of law, to wit, under color of  statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan  and/or Defendant Michigan State University.

73.    At all relevant times, Defendant Strampel was the Dean of the College of Osteopathic  Medicine under which Defendant Nassar worked as an Associate/Assistant Professor.

74.    At all relevant times Defendant Strampel was acting in the scope of his employment or agency with Defendant  MSU.

75.    At all relevant times Defendants Nassar and Strampel had a special relationship and collegial affiliation with one another as co-employees  for Defendant MSU and as fellow medical professionals.

76.    Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic  Medicine degree in approximately 1993.

77.    Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in  various positions.

78.    As an Assistant and/or Associate Professor for Defendant MSU Division of Sports Medicine, Defendant Nassar provided medical services for Defendant MSU's Sports Medicine Clinic.

79.    For over twenty (20) years, Defendant MSU's Sports Medicine Clinic has provided health  care to MSU student athletes and others.

80.    When the MSU Defendants operated the MSU Sports Medicine Clinic and provided  medical services to Plaintiff, and others, they were acting as an arm of the state.

81.    The MSU Sports Medicine Clinic charged patients, including Plaintiff, for their receipt of  medical services.

82.    Charging Plaintiff (and others) and billing insurance companies for medical services is an  activity proprietary in nature.

83.    Charging Plaintiff (and others) and billing insurance companies for medical services  creates a fiduciary and special relationship between Plaintiff and the MSU Defendants.

84.    The MSU Defendants charged fees comparable to specialists for the services provided at the MSU Sports Medicine Clinic.[6]

---

[6] *See*,  Michigan  Administrative  Code,  R.  325.70001,  et  seq.,  Available  at

85.     The MSU Sports Medicine Clinic engaged in proprietary functions by entering into the business of providing medical services for the primary purpose of raising funds and making a profit for the MSU Defendants.

86.     By seeking medical treatment and services from Defendant MSU's Sports Medicine Clinic  and from Defendant Nassar while in the course of his employment, agency, and/or representation with the MSU Defendants, a special, confidential, and fiduciary relationship  existed between Plaintiff, the MSU Defendants, and Defendant Nassar.

87.     As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment  should have consisted largely of osteopathic adjustments and kinesiology treatment to  patients, including students and student-athletes of Defendant MSU.

88.     Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

89.     Defendant Nassar is not and has never been trained or certified as a pelvic floor therapist.

90.     While employed by Defendant MSU, Defendant Nassar practiced  medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

91.     Because of the special and fiduciary relationship shared between the MSU Defendants,  and Plaintiff, each Defendant had a legal duty  to exercise reasonable care toward Plaintiff, who were their patients and members.

92.     The MSU Defendants had a duty to exercise  reasonable care in supervising Defendant Nassar while he was their employee or agent.

---

http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf.      Last      accessed, January 5,  2017.

11

93.    Collectively, the Defendants breached the duties they owed Plaintiff and ultimately failed to exercise reasonable care, leaving Plaintiff vulnerable to be sexually abused, assaulted, and molested by Defendant Nassar.

94.    During his employment, agency, and representation with the MSU Defendants, Defendant Nassar sexually assaulted, abused, and molested Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

95.    The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.

96.    Defendant MSU, through its Sports Medicine Clinic and Defendant Nassar, provided medical care and treatment to Plaintiff who was a patient of Defendant Nassar.

97.    Plaintiff was a business invitee at the MSU Sports Medicine Clinic where she expected to receive medical care and treatment by Nassar, free of harm.

98.    Defendant MSU is not immune from liability as it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Defendant Nassar as early as 1997 and failed to train its employees, representatives, and agents about such dangers and to warn and protect Plaintiff from such dangers, and otherwise failed to supervise and train employees of the MSU Sports Medicine Clinic to act in a manner consistent with operating a reasonably prudent facility.

99.    After 1997, MSU Defendants were repeatedly put on notice of Defendant Nassar's illegal conduct through complaints made by student athletes including Christie Achenbach, Tiffany Thomas Lopez to MSU employees, including trainers and coaches.

12

100.    Defendants MSU also had the following obligations, among others, pursuant to its Office of Institutional Equity ("OIE") policy:

a.    "to promptly take steps to investigate or otherwise determine what occurred and then to address instances of relationship violence and sexual misconduct when it knows or should have known about such instances."

b.    to inform "the MSU Police of all reports it receives regarding sexual assaults.";

c.    to "take immediate steps to initiate the investigatory process to determine what happened and to resolve the matter promptly and equitably.";

d.    to "take prompt, responsive action to support a claimant and will take steps to eliminate, prevent, or address a hostile environment if it determines that one exists.";

e.    "to conduct a prompt, adequate, reliable, and impartial investigation to determine what occurred and then to take appropriate steps to resolve the situation when it learns of an incident of sexual misconduct;

f.    "independently investigate complaints of relationship violence and sexual misconduct.";

g.    to conduct an investigation "by the Office of Institutional Equity under the direction of the Deputy Title IX Coordinator for Investigations."; and

h.    to promptly report allegations of sexual misconduct "to the Office of Institutional Equity."

101.    Upon information, and belief, and in violation of federal law, state law, and MSU OIE Policy, Defendant MSU failed to take any action in response to the 1997/1998, 1999, and 2000 complaints.

13

102.    Because MSU took no action to investigate the 1997/1998, 1999 or 2000 complaints and took no corrective action during that time, under the guise of treatment, dozens of Plaintiffs,  and possibly hundreds of others, many of whom were minors, were also sexually assaulted,  abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without  the use of gloves or lubricant and by touching and groping their breasts.

103.    In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by  Steven J. Karageanes. Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac  ligaments as an area of the body not fully examined due to its proximity to the genitalia  and buttocks, and stated it was "referred to as the 'no fly zone' "because of the many cultural stigmas in touching this area."

104.    Defendant Nassar recommended taking "special measures to explain any examination and  techniques applied in this region," and "warning in advance of what you are planning to  do," among other suggestions.

105.    There is no mention of intra-vaginal or intra-rectal techniques or procedures in the chapter.

106.    As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiff as:

   a.    he did not explain any intravaginal or intra-rectal techniques to Plaintiff or their  parents; and,

   b.    he did not warn Plaintiff he was going to engage in vaginal or anal digital  penetration before doing so.

107.    After 2005 other individuals reported Defendant Nassar's conduct employees of Defendant MSU, clinical psychologist Gary Stollak and local law enforcement.

14

108.    In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from  2011,  and  Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[7]

109.    The OCR concluded their investigation in 2015 and presented Defendant MSU with a  twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[8]

110.    While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014.

111.    Upon information and belief, Defendant MSU investigated the 2014 complaints through  their Office of Institutional Equity.

112.    However, Plaintiff Jane D1 Doe reported facts to Defendant MSU which were omitted or  withheld from the investigative report.

113.    Three months after initiating the investigation, in July 2014, the victim's complaints were   dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature." [9]

---

[7] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed Feb. 17, 2018.

[8] *See*, Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at,  https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf.  Last accessed Feb. 17, 2018.

[9] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016.  Available

114.    A second report was issued by Defendant MSU  regarding Jane D1 Doe's complaints with an entirely different conclusion section  which stated:

> We cannot find that the conduct was of a sexual nature. Thus, it did not violate the  Sexual Harassment Policy. However, we find the claim helpful in that it brought to  light some significant problems that the practice will want to address.
>
> We find that whether medically sound or not, the failure to adequately explain  procedures such as these invasive, sensitive procedures, is opening the practice up  to liability and is exposing patients to unnecessary trauma based on the possibility   of perceived inappropriate sexual misconduct. In addition, we find that the failure  to obtain consent from patients prior to the procedure is likewise exposing the  practice to liability. If procedures can be performed skin-on-skin or over clothes in  the  breast  or  pelvic  floor  area,  it  would  seem patients should have the choice between the two. Having a resident, nurse or someone in room during a sensitive  procedure protects doctors and provides patients with peace of mind. If "touching  is what DO's do" and that is not commonly known, perhaps the practice will want  to consider a disclaimer or information sheet with that information provided to the  patient up front.
>
> Finally, we believe the practice should consider whether its procedure for intake of  complaints about physicians' behavior is adequate. [Plaintiff Jane D1 Doe] claims   she tried to file a complaint with the front desk receptionist, telling her that she  was cancelling her appointment because she felt "violated." Whether this triggers a  reporting protocol should be examined by the practice.[10]

115.    Following the investigation, Defendant Nassar became  subject to new institutional guidelines including:

a.    Defendant Nassar was not to examine or treat patients alone but was to be

a ccompanied by a chaperone such as a resident or nurse; [11]

b.    The alleged "procedure" was to altered to ensure there would be little to no skin

---

at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-  sexual-assault- harassment-larry-nassar/94993582/

[10] *See,* MSU hid full conclusions of 2014 Nassar report from victim, Matt Mencarini, Lansing State Journal,          Jan.          26,          2018,          available          at, https://www.lansingstatejournal.com/story/news/local/2018/01/26/michigan-state-larry-nassar-title-ix/1069493001/. Last accessed, June 1, 2018.

[11] Last accessed Feb. 17, 2018.

to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

    c.    New people in the practice were to be "oriented" to ensure understanding with the guidelines

116. Defendant Strampel failed to supervise, oversee, or otherwise ensure Defendant Nassar was adhering to the conditions listed above.

117. From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

118. Defendant Nassar was permitted to return to work although a criminal investigation remained open until approximately December 2015.

119. At the conclusion of the criminal investigation, on or around December 15, 2015, a representative from Defendant MSU's police department spoke with Defendant Nassar, advised him to thoroughly explain his medical techniques to patients prior to touching them, ensuring that they understood, and to have a chaperone in the exam room with him at all times.[37]

120. Defendant Nassar responded indicating he fully understood and had made that process and procedure his routine since the case evolved.[12]

121. Defendant Nassar's statement to Defendant MSU was completely false, and his statement and actions went unchecked, unverified, and unsupervised by the MSU Defendants.[13]

---

[12] MSU University Police Department Case Report No. 1758100919. Available at http://mediad.publicbroadcasting.net/p/michigan/files/201712/fbi_investigation_into_nassar.pdf?_ga=2.158457466.1791923992.1513722353-1282647051.1440964267.

[13] *See generally,* specific allegations from Plaintiff who were sexually abused, assaulted, and molested after July 2014 in W.D. Mich. Case Nos. 1:17-cv-29, 1:17-cv-222, 1:17-cv-244, 1:17-

122.    At no time during or following the investigation did Defendants MSU, MSU Board of Trustees and Strampel take any steps to ensure Defendant Nassar was in compliance with the guidelines.

123.    Defendants MSU, MSU Board of Trustees and Strampel failed to monitor Defendant Nassar in his clinical practice following the investigation.

124.    Prior to and after the investigation, Defendants MSU, MSU Board of Trustees and Strampel failed to train Defendant Nassar regarding inappropriate touching, informed consent, chaperone practices, and medical record charting.

125.    Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

   a.    Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[14] and,

   b.    A former patient of Defendant Nassar, Plaintiff Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. [15]

126.    Reasons given to Defendant Nassar for his termination included but were not

---

cv-254, 1:17-cv-257, 1:17-cv-288, 1:17-cv-349, 1:17-cv-676, and 1:17-cv-684.

[14] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/documents/3106054-Jane-JD-COMPLAINT-Signed.html. Last accessed, January 5, 2017.

[15] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

limited to:

    a.    Deviation from "required best practices put in place following the internal sexual harassment investigation conducted … in 2014;"

    b.    Failure to disclose a 2004 complaint to Meridian Township Police; and,

    c.    Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

127.    Plaintiff was made aware of the allegations of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or sometime thereafter through related media coverage.

## SPECIFIC FACTUAL ALLEGATIONS- ALYSSA CORN

128.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

129.    Plaintiff Alyssa Corn (DOB 1997) treated with Defendant Nassar at his office at MSU Sports Medicine Clinic from 2012-2015.

130.    In 2012, Plaintiff Corn was a minor, 15 years old.

131.    Plaintiff Corn presented to Defendant Nassar with complaints of injuries to her back suffered through cheerleading.

132.    Defendant Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff Corn that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

133.    Plaintiff Corn was sexually assaulted under the guise of "medical treatments" 24 times by Defendant Nassar, including   November 2, 2012, January 28, 2013, February 25, 2013, March 26, 2013, April 9, 2013, June 24, 2013, July 23, 2013, August 27, 2013, October 17, 2013,

October 17, 2013, November 15, 2013, January 7, 2014, February 11, 2014, March 18, 2014, April 16, 2014, May 23, 2014, July 7, 2014, September 9, 2014, October 24, 2014, December 9, 2014, January 27, 2015, February 18, 2015, March 17, 2015, June 5, 2015.

134.    The entire course of Nassar's conduct is subject to the "continuous violation doctrine" entitling Plaintiff to recover for damages resulting from all of the assaults.  The 24th sexual assault, which is within the 3-year statute of limitations (June 5, 2015), is sufficiently similar in kind to the first 23 assaults, that the sexual assaults occurred with sufficient frequency and the first 23 sexual assaults did not acquire a degree of knowledge or clarity before June 5, 2015 so that Plaintiff was on notice that the Nassar's activities were not appropriate medical treatments.

135.    During each of the 24 separate occasions, at appointments at his office at MSU, Defendant  Nassar digitally penetrated Plaintiff Corn's vagina with his finger and  thumb for approximately 20 minutes without prior notice and without gloves or lubricant (on some occasions) under the guise of performing "treatment."

136.    Defendant Nassar draped Plaintiff Corn with a towel without any warning and without asking permission.

137.    Defendant Nassar also massaged Plaintiff Corn's genitals.

138.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical  procedure to Plaintiff Corn.

139.    Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Corn's vagina.

140.    Plaintiff Corn did not treat or intend to treat with Defendant Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

141.    Plaintiff Corn believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

142.    After reviewing a media reports regarding Defendant USAG's failure to report sexual  abuse, in February 2017, Plaintiff made a complaint with Defendant MSU's Police Department.

**COUNT I**
**VIOLATION OF TITLE IX**
**20 U.S.C. §1681(a),** *et seq.*
**AGAINST DEFENDANTS MSU, MSU TRUSTEES**

143.    Plaintiff realleges and incorporates by reference the allegations contained in the previous  paragraphs.

144.    Title IX's statutory language states, "No *person* in the United States shall on the basis of sex,  be … subject to discrimination under any education program or activity receiving Federal financial assistance …"[16]

145.    Plaintiff is a "person" under the Title IX statutory language.

146.    Defendants MSU and MSU Trustees ("MSU") receives federal financial assistance for its education program and is  therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

147.    Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual  abuse, and sexual harassment.

148.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers   all programs of a school, and extends to sexual harassment and assault by employees, students

---

[16] 20 U.S.C. §1681(a), *et seq*. *See generally*, U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. Last accessed, Feb. 17, 2018.

and third parties.[17]

149.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU  programs, which provides medical treatment to students, athletes, and the public.

150.    Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital  vagina penetration and touching  of  Plaintiff  vaginal  area,  constitutes sex discrimination under Title IX.

151.    As early as 1997/1998, 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

152.    Specifically, MSU was notified about Defendant Nassar's sexual abuse and molestation through:

    a.      MSU's Kathie Klages by Larissa Boyce and Jane B8 Doe in or around 1997/1998;

    b.      Kelli Bert by Plaintiff Christie Achenbach in or around 1999;

    c.      Destiny Teachnor-Hauk by Tiffany Thomas Lopez in 2000 on more than  one occasion;

    d.      Lianna Hadden by Jennifer Rood Bedford between approximately 2000 and 2002;

    e.       Gary Stollak in 2004 by Kyle Stephens; and,

    f.      Jeffrey Kovan in or around 2014 by Jane D1 Doe.

---

[17] 20 U.S.C. §1681(a), *et seq*. *See generally*, U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. Last accessed, Feb. 17, 2018.

153.    Each of the individuals and Defendants listed above were in a position of authority and at a minimum should have advised that the Plaintiff no longer see Defendant Nassar for "treatment."

154.    MSU failed to carry out their duties to investigate and take corrective action under Title IX.

155.    In 2014, Jane D1 Doe reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[18] Jane D1 Doe reported to Defendant MSU facts which were omitted or withheld from the investigative report as described.

156.    Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[19]

157.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.

158.    MSU failed to supervise Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge Nassar posed

---

[18] *See* U.S. Dep't of Educ. Office for Civil Rights, 2001 Guidance, 2001; *see also* U.S. Dep't of Educ. Office for Civil Rights, Dear Colleague Letter: Sexual Violence 4 n.11 (Apr. 4, 2011); U.S. Dep't of Educ. Office for Civil Rights, Q&A on Campus Sexual Misconduct 1 n.1 (Sept. 2017) (stating that rulemaking was pending, and prior guidelines issued should be relied upon to determine compliance).

[19] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-     sexual-assault- harassment-larry-nassar/94993582/, last accessed January 5, 2017.

a substantial risk of additional sexual abuse of females whom he had unfettered access.

159.    After the 2014 complaints Defendant Nassar sexually assaulted, abused, and molested Plaintiff.

160.    MSU acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

        a.      failing to investigate and address allegations of sexual abuse as  required by Title IX;

        b.      failing to institute corrective measures to prevent Defendant Nassar from violating  and sexually abusing other students and individuals, including minors.

161.    MSU acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the  known circumstances, Defendant Nassar's actions with female athletes, and his access to  young girls and young women.

162.    MSU's deliberate indifference was confirmed by the Department of  Education's investigation into Defendant MSU's handling of sexual assault and relationship  violence allegations which revealed:

        a.      A sexually hostile environment existed and affected numerous students and staff  on Defendant MSU's campus;

        b. That the University's failure to address complaints of sexual harassment, including   sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[20]

---

[20] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4,

163.    MSU's responses were clearly unreasonable as Defendant Nassar continued  to sexually assault female athletes and other individuals until he was discharged from the  University in 2016.

164.    Between the dates of approximately 1996 and 2016, MSU acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiff and others on  and off school premises.

165.    MSU's failure to promptly and appropriately investigate and remedy and  respond to the sexual assaults after they received notice subjected Plaintiff to further  harassment and a sexually hostile environment, effectively denying Plaintiff's access to  MSU medical care.

## COUNT II
## SEX DISCRIMINATION
## 42 U.S.C. § 18116 (PATIENT PROTECTION AND AFFORDABLE CARE ACT § 1557)  AGAINST DEFENDANTS MSU AND MSU TRUSTEES

166.    Plaintiff realleges and incorporates by reference the allegations contained in the previous  paragraphs.

167.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified at 42 U.S.C. § 18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . [T]itle  IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is  receiving Federal financial assistance, including credits, subsidies, or  contracts of insurance, or under any program or activity that is administered  by an Executive Agency or any entity established under this [T]itle (or  amendments). The enforcement mechanisms provided for and available under . . . [T]itle IX shall apply for purposes of violations of this subsection.

---

2017.

168.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* prohibits sex  discrimination in programs that receive federal financial assistance.

169.    Plaintiff, as women have a right under 42 U.S.C. § 18116 to receive health care services  free from discrimination on the basis of sex.

170.    Plaintiff are "individuals" within the meaning of 42 U.S.C. § 18116.

171.    Defendant MSU receives Federal financial assistance within the meaning of 42 U.S.C. §  18116 because it receives federal financial assistance such as credits, subsidies, or contracts  of insurance. [21]

172.    Defendant MSU employed the services of Defendant Nassar, doctors,  and other professional and non-professional health care providers who cared for Plaintiff  from  2012-2015 and  held  themselves  out  to  the  public  as  competent,  careful,  and  experienced in the care and treatment of patients.

173.    Plaintiff sought medical care from Defendant Nassar at the MSU Sports Medicine Clinic,  for  injuries  to her back.

174.    Plaintiff expected to receive medical care for her injuries without being sexually assaulted and without fear of sexual harassment or assault.

175.    Defendant Nassar's conduct and actions toward Plaintiff that being nonconsensual and   assaultive  digital  vaginal  penetration,  touching  of  Plaintiff'  vaginal  area  constitutes   sex

---

[21] As long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of §1557. *Rumble v. Fairview Health Services,* D. Minn.Case No. 0:14-cv-2037, ECF 31 (Page 25 of 63, no PageID)(" Thus, as long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557. A potential plaintiff need not seek medical care specifically from the part of the organization that receives federal funding."). Also available at 2015 WL 1197415 * 12.

discrimination under Title IX and 42 U.S.C. § 18116, and otherwise denied each individual Plaintiff the benefits of appropriate medical care.

176.    MSU and Defendant Strampel knew or should have known of Nassar's abuse yet failed to take corrective action.

177.    MSU's vicariously and/or contractually liable for the actions of its principals, employees, agents, and representatives.

178.    MSU and Strampel supervised Nassar and/or were in a position to take appropriate action upon learning of concerns of misconduct as early as 1997.

179.    MSU and Strampel are directly liable for their failure to train, educate, and supervise.

180.    Defendants MSU and Strampel failed to properly train and supervise Nassar related to his treatment of Plaintiff and with respect to promulgating and enforcing policies and procedures related to patient safety (*e.g.* use of gloves; consent; chaperones, etc.).

181.    Because of Defendants' inaction and deliberate indifference, Defendants forced Plaintiff to endure unnecessary pain, trauma, humiliation, and duress.

182.    Because of Plaintiff's sex, Defendants treated Plaintiff with a lack of care, dignity, and respect.

183.    The conduct of MSU described above constitutes sex discrimination against Plaintiff.

184.    MSU perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiff's rights.

185.    MSU's failure to promptly and appropriately investigate, respond to, and remedy the sexual assaults after they received repeated notice of Defendant Nassar's wrongdoing

subjected Plaintiff and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment—effectively denying them all access to health programs or activities at MSU, and effectively denying them the benefits of appropriate medical care.

186. In the alternative, the actions or inaction of MSU was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages.

## COUNT III
### VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983
#### U.S. CONST., AMEND XIV
### AGAINST MSU INDIVIDUAL DEFENDANTS STRAMPEL AND NASSAR

187. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

188. Plaintiff, a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

189. Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

190. At all relevant times the MSU individual Defendants, including Defendant Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

191. The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

192. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom,

28

policy,  and/or practice, failed to do so with deliberate indifference.

193.    As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the  ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate  indifference.

194.    The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their  campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

195.    Defendant MSU's internal policies provide that "[a]ll University employees ... are expected  to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred   at a University event or on University property." They state further: "[t]he employee must  report all relevant details about the alleged relationship violence or sexual misconduct that  occurred on campus or at a campus-sponsored event... "

196.    Defendant MSU's aforementioned internal policies were violated when the MSU Defendants  took no actions to address the following complaints regarding Defendant Nassar's conduct:

      a.      Larissa Boyce and Jane B8 Doe in or around 1997/1998;

      b.      Christie Achenbach in or around 1999;

      c.      Tiffany Thomas Lopez in 2000 (on more than one occasion);

      d.       Jennifer Rood Bedford between approximately 2000 and 2002;

      e.      Kyle Stephens in or around 2004; and,

      f.      Jane D1 Doe in or around 2014.

197.    The MSU Defendants failure to address Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez, and Jennifer Rood Bedford, and Kyle Stephens' complaints led to an unknown number of individuals including Plaintiff Corn, being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

198.    Defendants Strampel was the moving forces or  causes of repeated constitutional injuries to Plaintiff based on their failures to report, train,  supervise, investigate, or otherwise act in response to complaints of Defendant Nassar's  conduct.

199.    Additionally, the MSU Defendant's failure to properly address Jane D1 Doe's 2014 complaint   regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted,  abused and molested by Defendant Nassar.

200.    Ultimately, Defendants failed to adequately and properly investigate the complaints of  similarly-situated individuals including but not limited to failing to:

a.    perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints in 1997/1998, 1999, 2000, between 2000 and  2002, 2004, and 2014;

b.    thoroughly review and investigate all policies, practices, procedures and training  materials related to the circumstances surrounding the conduct of Defendant  Nassar;

c.    recognize sexual assault when reported in 2014 and permitting University officials  to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

d.    ensure all institutional guidelines issued following the 2014 investigation into  Defendant Nassar's conduct were satisfied.

30

201.    As indicated in the U.S. Department of Education Office of Civil Rights report,[22] the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

202.    Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

203.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon  Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted  to deliberate indifference, the MSU individual Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983.

204.    The MSU individual Defendants are also liable to Plaintiff under 42 U.S.C. §1983 for maintaining  customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

205.    The MSU individual Defendants tolerated, authorized and/or permitted a custom, policy, practice or  procedure of insufficient supervision and failed to adequately screen, counsel, or discipline  Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights  of persons such as Plaintiff with impunity.

---

[22] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed Feb. 17, 2018.

## COUNT IV
## FAILURE TO TRAIN AND SUPERVISE 42 U.S.C. § 1983
## AGAINST STRAMPEL

206.    Plaintiff reallege and incorporate by reference the allegations contained in the previous  paragraphs.

207.    Strampel had the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

208.    Strampel failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

   a.    Perceive, report, and stop inappropriate sexual conduct on campus;

   b.    Provide diligent supervision over student-athletes and other individuals;

   c.    Report suspected incidents of sexual abuse or sexual assault;

   d.    Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's  campuses premises;

   e.    Provide a safe environment for all students, faculty, staff, and visitors to Defendant  MSU's premises free from sexual harassment; and,

   f.    Properly train faculty and staff to be aware of their individual responsibility for  creating and maintaining a safe environment.

209.    The above list of duties is not exhaustive.

210.    Defendant Strampel had supervisory  authority over Defendant Nassar.

211.    At all relevant times, Defendant Strampel was the Dean of the College of Osteopathic  Medicine under which Defendant Nassar worked as an Associate/Assistant Professor.

212.    Strampel failed to adequately supervise or investigate Defendant Nassar,  especially

32

after MSU knew or should have known of complaints regarding his nonconsensual  sexual  touching and  assaults  during  "treatments"  was  so  reckless  as  to  demonstrate  a  substantial lack of concern for whether an injury would result to Plaintiff.

213.    Following the 2014 Title IX investigation regarding Plaintiff Jane D1 Doe, the MSU  Defendants' (including but not limited to Defendants Strampel) failure to  inform MSU Sports Medicine Clinic staff of the conditions Defendant Nassar was subject to regarding modifying the "procedure," limiting skin-on-skin contact, having chaperones in the  room was so reckless as to demonstrate a substantial lack of concern for whether an injury  would result to Plaintiff.

214.    At  no  time  during  or  following  the  investigation  did  Defendants  MSU,  MSU Board  of  Trustees, Strampel take steps to ensure Defendant Nassar was in  compliance with the guidelines,  which  was  so  reckless  as  to  demonstrate  a  substantial  lack  of concern for whether an injury would result to Plaintiff.

215.    Defendants MSU, MSU Board of Trustees, Strampel failed to monitor  Defendant Nassar in his clinical practice following the investigation, which was so reckless  as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

216.    Prior  to  and  after  the  investigation,  Strampel  failed  to  train  Defendant  Nassar regarding  inappropriate  touching,  informed  consent,  chaperone  practices,  and  medical  record charting which was so reckless  as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

217.    Strampel  failed  to  adequately  train  medical  staff,  and  others   regarding  the aforementioned duties, which led to violations of Plaintiff's rights.

218.    As  a  result,  Strampel  deprived  Plaintiff  of  rights  secured  by  the  Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

## COUNT V
## GROSS NEGLIGENCE MCL §691.1407
## PLAINTIFF AGAINST DEFENDANTS STRAMPEL AND NASSAR

219.   Plaintiff reallege and incorporate by reference the allegations contained in the previous   paragraphs.

220.   Nassar and Strampel owed Plaintiff a duty to use due care to ensure her safety and freedom   from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

221.   Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an   employee, agent, and/or representative of the MSU Defendants.

222.   By seeking medical treatment from Defendant Nassar in the course of his employment,   agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary  relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

223.   Defendant MSU's internal policies provide that "[a]ll University employees ... are expected  to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at  a University event or on University property." They state further: "[t]he employee must  report all relevant details about the alleged relationship violence or sexual misconduct that  occurred on campus or at a campus-sponsored event... "

224.   Defendant MSU's aforementioned internal policies were violated when the MSU Defendants   took no actions to address the following complaints regarding Defendant Nassar's conduct:

  a.   Larissa Boyce and Jane B8 Doe in or around 1997/1998;

  b.   Christie Achenbach in or around 1999;

34

      c.        Tiffany Thomas Lopez in 2000 (on more than one occasion);

      d.        Jennifer Rood Bedford between approximately 2000 and 2002;

      e.        Kyle Stephens in or around 2004; and,

      f.        Jane D1 Doe in or around 2014.

225.    Strampel's failure to address the above complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

226.    Strampel was the moving forces or cause of repeated constitutional injuries to Plaintiff based on a failure to report, train, supervise, investigate, or otherwise act in response to complaints of Defendant Nassar's conduct.

227.    Strampel's failure to properly address Jane D1 Doe's 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

228.    Strampel's failure to supervise or investigate Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

229.    Following the 2014 Title IX investigation regarding Plaintiff Jane D1 Doe, the MSU Defendants' failure to inform MSU Sports Medicine Clinic staff of the conditions Defendant Nassar was subject to regarding modifying the "procedure," limiting skin-on-skin contact, and having chaperones in the room was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

230.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under

the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial  lack of concern for whether an injury would result to Plaintiff.

231.    Strampel's conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

232.    Strampel's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

233.    Strampel breached duties owed to Plaintiff and was grossly negligent when they conducted themselves by the actions described above, said acts having been committed  with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and  with a substantial lack of concern as to whether an injury would result.

## COUNT VI
### NEGLIGENCE
### PLAINTIFF AGAINST MSU

234.    Plaintiff reallege and incorporate by reference the allegations contained in the previous  paragraphs.

235.    MSU owed Plaintiff a duty of ordinary care to ensure her safety and  freedom from sexual assault, abuse, and molestation while interacting with their employees,   representatives and/or agents.

236.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent,  and/or representative of the MSU, a special, confidential, and fiduciary  relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

237.    Plaintiff sought treatment at Defendant MSU's Sports Medicine Clinic in which she paid  or was billed for medical treatment and was in a special relationship with the MSU

36

Defendants.

238.    Defendant Nassar owed Plaintiff a duty of ordinary care.

239.    MSU's failure to adequately train and supervise Defendant Nassar breached  the duty of ordinary care.

240.    MSU had notice through its own employees, agents, and/or representatives  as early as 1997/1998, again in 1999, 2000, between 2000 and 2002, 2004, and again in 2014  of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with  young girls and women.

241.    MSU should have known of the foreseeability of sexual abuse.

242.    MSU's failure to properly investigate, address, and remedy complaints  regarding Defendant Nassar's conduct was a breach of ordinary care.

243.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the   course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

244.    MSU is not entitled to protection of governmental immunity because MSU was engaged in a proprietary function when it collected fees for "medical services" performed by Nasssar.

## COUNT VII
## VIOLATION OF ELLIOT LARSEN CIVIL RIGHTS ACT, MCL 37.2101
## AGAINST MSU AND DEFENDANT NASSAR

245.    Plaintiff reallege and incorporate by reference the allegations contained in the previous   paragraphs.

246.    The Elliott-Larsen Civil Rights Act (ELCRA) prohibits discrimination based on sex, MCL 37.2102.

247.    Discrimination because of sex includes sex harassment, "MCL 37.2103(i).

248. "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i).

249. The ELCRA protects against sexual harassment in educational institutions such as MSU, MCL 37.2401.

250. An educational institution shall not "discriminate against an individual in the full utilization of or benefit from the institution or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a).

251. ELCRA also protects against sex harassment in places of public accommodation. MCL 37.2302. An individual shall not be denied "full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of a place of public services because of . . . sex. MCL 37.2302 (a).

252. MSU is a place of public accommodation because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold or otherwise made available to the public." MCL 37.2301 (a).

    a. Plaintiff is a person within the meaning of MCL 37.2103 (g).

    b. Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes and the public, wherein MSU, through its Sports Medicine Clinic, solicits and markets to people like Plaintiff and places Plaintiff within the university community.

    c. Nassar's actions and conduct toward plaintiff denied her the full and equal enjoyment of MSU's services at a place of public accommodation, in violation of the ELCRA.

d.      Nassar's actions and conduct toward Plaintiff of nonconsensual sexual assault, battery and molestation constitutes sex discrimination under the ELCRA.

e.      MSU is liable for the conduct of Nassar under the ELCRA.

**DAMAGES**
**FOR ALL AFOREMENTIONED CAUSES OF ACTION**

253.    Plaintiff reallege and incorporate by reference the allegations contained in the previous  paragraphs.

254.    As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright,  grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be  prevented from performing Plaintiff' daily activities and obtaining the full enjoyment of  life; have sustained and continue to sustain loss of earnings and earning capacity; and have  required and will continue to require treatment, therapy, counseling, and hospitalization to  address the mental anguish and despair caused by Defendants' actions.

255.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts  and causes of action constitute violations of Plaintiff' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States  District Court has jurisdiction to hear and adjudicate said claims.

WHEREFORE, Plaintiff request this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each and all of the above counts where applicable and requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including

but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including reasonable attorney fees, interest and litigation costs.

PITT, McGEHEE, PALMER, & RIVERS, P.C.

By: */s/ Michael L. Pitt*
Michael L.  Pitt P24429
Megan Bonanni P52079
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
248-398-9804 (fax)
mpitt@pittlawpc.com
mbonanni@pittlawpc.com

Dated: June 1, 2018

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALYSSA CORN,

       Plaintiff,

v.

MICHIGAN STATE UNIVERSITY; THE BOARD
OF TRUSTEES OF MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR (individually;);
and  WILLIAM D. STRAMPEL (individually),

       Jointly and Severally,

       Defendants.

---

Michael L.  Pitt (P24429)
Megan A. Bonanni (P52079)
PITT, MCGEHEE, PALMER & RIVERS. P.C.
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
248-398-9804 (fax)
mpitt@pittlawpc.com
mbonanni@pittlawpc.com

---

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all of the facts and issues involved in this matter

and has paid the appropriate jury fee for same.

          **PITT, McGEHEE, PALMER, & RIVERS, P.C.**
          By: */s/ Michael L. Pitt*
          Michael L.  Pitt P24429
          Megan Bonanni P52079
          117 W. Fourth Street, Suite 200
          Royal Oak, MI  48067
          248-398-9800
          248-398-9804 (fax)
          mpitt@pittlawpc.com
Dated: June 1, 2018         mbonanni@pittlawpc.com